UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM LAWRENCE LEE, JR. | No. 2:17-cv-01923-KJN |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Tom Lee seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") was based upon legal error and was not supported by substantial evidence in the record. (See ECF No. 11.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 12.) Thereafter, plaintiff filed a reply brief. (ECF No. 13.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and enters judgment for the Commissioner.

I. BACKGROUND

Plaintiff was born on September 18, 1966; has a GED; and previously worked as a heavy equipment operator.[2] (Administrative Transcript ("AT") 29-30.) On February 24, 2014, plaintiff applied for DIB, alleging that his disability began on August 9, 2011. (AT 20, 171.) Plaintiff claimed that he was disabled due to status post neck surgery, degenerative disc disease, migraine, and shoulder problems. (AT 22, 174.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on February 23, 2016. (AT 41-62.) The ALJ subsequently issued a decision dated April 13, 2016, determining that plaintiff had not been under a disability as defined in the Act, from August 9, 2011, the date of the alleged disability, through the date of the ALJ's decision. (AT 17–31.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 17, 2017. (AT 1–4.) Plaintiff subsequently filed this action on September 15, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ improperly assessed plaintiff's credibility; and (3) whether the ALJ's step five finding lacks substantial evidence.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] At step one, the ALJ concluded that plaintiff had not engaged in

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

3

substantial gainful activity since August 9, 2011, the alleged onset date. (AT 22.) At step two, the ALJ found that plaintiff "has the following severe impairments: status post neck surgery, degenerative disc disease, migraine and shoulder problems." (Id.) However, at step three the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform less than the full range of light work as defined in 20 C.F.R. § 416.1567(b); more specifically, that plaintiff:

> could lift and/or carry ten pounds frequently, twenty pounds occasionally; he could sit for six hours out of an eight-hour workday; he could stand and/or walk for six hours out of an eight-hour workday; he is not to climb ladders, ropes or scaffolds; he could frequently balance; he could occasionally climb ramps and stairs, crouch, stoop, crawl, kneel, reach overhead bilaterally, and move his neck; and he is off task five percent of the time due to headache pain.

(AT 24.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 29.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's ("VE") testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 30.) Thus, the ALJ concluded that plaintiff had not been disabled from August 9, 2011, his alleged disability onset date, through April 13, 2016, the date of the ALJ's decision. (AT 31.)

////

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

   1. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

////

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

In this case, plaintiff argues that the ALJ improperly discounted the opinions of treating physicians, Dr. Cynthia Dillon and Dr. Leonard Soloniuk, and examining physician, Dr. Michael Sommer. Because the doctors' opinions were contradicted by other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons to discount their opinions. As discussed below, the court concludes the ALJ properly discharged that obligation.

Plaintiff asserts the ALJ erred by giving little weight to the opinion of plaintiff's treating physician, Dr. Dillon, who filled out a RFC questionnaire on April 16, 2014, diagnosing plaintiff with cervical and lumbar radiculopathy, decreased flexion and extension in plaintiff's neck and back, sensory changes in a C5 distribution, and atrophy in plaintiff's right deltoid muscle, and noting he needed to use a cane to avoid falls and decrease pain, that he tended to drop items, and that his pain was partially controlled with opiates with a poor prognosis. (AT 28-29, 1949-51.) The ALJ gave little weight to Dr. Dillon's opinion, noting it was not supported by objective evidence and inconsistent with the record as a whole, was primarily based on plaintiff's subjective complaints, and was inconsistent with evidence that showed plaintiff's chronic pain was adequately managed with injections and medication. (AT 29.)

The ALJ noted "Dr. Dillon primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but he did not provide objective clinical or diagnostic findings to support the functional assessment." (AT 29.) In discussing the objective evidence in the medical record, the ALJ pointed out that in 2012, Dr. Soloniuk found that plaintiff was able to "transfer station to station without assistance and ambulates with a steady gait." (AT 26, 214, 226, 232, 479.) On November 26, 2013, plaintiff's gait was observed to be normal. (AT 26, 527.) The ALJ further observed that in a January 2016 examination, plaintiff's strength was 5/5 in all extremities, tone was normal, there was no wasting or fasciculations, reflexes were 2+ and symmetrical, gait and coordination were normal, Romberg and Babinski were negative, there were no limits to his range of motion, and he was alert and oriented times three. (AT 27, 2154.) The ALJ also noted plaintiff's December 9, 2015 report to Dr. Soloniuk that Norco remains his saving grace; taken twice per day it allows him to maintain fundamental chores throughout the course of the day. (AT 27, 2174.)

6

Furthermore, the ALJ observed that Dr. Dillon's opinion is inconsistent with plaintiff's admitted activities of daily living. (AT 29.) For example, plaintiff admitted at his hearing that he did not use a cane as opined by Dr. Dillon. (AT 52-53, 1950.) Plaintiff also testified that he could change light bulbs, did small jobs around the house, went on walks for exercise, and could do a limited amount of fishing. (AT 25, 54, 2178.) An ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); see also Fisher v. Astrue, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the claimant's subjective complaints, and limitations identified by the doctor conflicted with the claimant's daily activities). Because plaintiff's reported level of activity exceeded the limitations assessed by Dr. Dillon, this was a specific and legitimate reason to give less weight to Dr. Dillon's opinion.

Finally, the ALJ's decision to give little weight to Dr. Dillon's opinion is further bolstered by the opinions of the state agency physicians, Dr. Gilpeer and Dr. Jaituni, who, after reviewing plaintiff's records, both concluded that there was significant evidence that plaintiff could perform light exertional work. (AT 63-87.) The ALJ reasonably relied on those opinions because of their consistency with the medical evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record."). Dr. Gilpeer opined plaintiff could perform light exertional work because of the medical report in 2016 indicating plaintiff had a strength testing at 5/5 in the upper and lower extremities, and his gait, toe to heel walking, and reflexes were all normal. (AT 70-71, 2154.) Dr. Jaituni also opined plaintiff could perform light exertional work, citing the same medical records as Dr. Gilpeer, as well as records indicating a full range of motion at the waist and a normal straight leg raising test. (AT 81, 84, 2154.)

////

In sum, the ALJ provided specific and legitimate reasons to discount Dr. Dillon's opinion. While plaintiff undoubtedly suffers from symptoms of his back and neck injury resulting in limitations to his daily life, the ALJ properly weighed the conflicting evidence and ultimately found, based on substantial evidence in the record as a whole, that such limitations were not present at a disabling level. The court thus defers to the ALJ's rational resolution of conflicting evidence and ambiguities in the record.

Next, plaintiff argues the ALJ erred in failing to specifically address or assign weight to the opinion of plaintiff's treating doctor, Dr. Soloniuk, that plaintiff would need periodic rest intervals throughout the day in addition to normal breaks because of his back and neck pain and his severe migraines. (AT 2173-74.) The ALJ never explicitly mentioned Dr. Soloniuk in his decision, but he cited to the doctor's medical evidence at several points. (AT 26, 214, 231-33.) When the ALJ noted that plaintiff was able to "transfer to station to station without assistance and ambulates with a steady gait," this medical evidence was observed by Gretchen Michael PA-C under Dr. Soloniuk's review. (AT 214.) The ALJ also referenced medical observations on plaintiff's daily activities, concentration, persistence, and pace made by William Casavant P.A. under Dr. Soloniuk's review. (AT 25, 2178, 2181.) The medical finding that plaintiff's medication allows him to "maintain fundamental chores throughout the course of the day" was also conducted under the review of Dr. Soloniuk. (AT 27, 2174.) Although Dr. Soloniuk administered plaintiff's steroid injections, it is unclear from any of his notes if he ever made any direct clinical findings himself as to plaintiff's functional capacities. (AT 2191-2200.)

Plaintiff argues the ALJ needed to specifically address Dr. Soloniuk's opinion, but the ALJ indicated that he read and considered all of the medical evidence in the record. (AT 26, 2211-2224.) Moreover, when "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." Id. The fact that the ALJ's RFC finding permitted light exertional work and that plaintiff would be off task for five percent of the work day due to headache pain indicates that the ALJ adequately considered Dr. Soloniuk's opinion. (AT 24.)

8

1    Lastly, plaintiff asserts the ALJ erred in rejecting critical aspects of the opinion of
2    examining doctor, Dr. Sommer, that plaintiff could not repeatedly bend, stoop, move his neck, or
3    move his arms at or above shoulder level. However, the ALJ indicated he gave significant weight
4    to the opinion of Dr. Sommer that plaintiff is precluded from heavy work. (AT 29, 2131.) In his
5    RFC finding, the ALJ indicated that plaintiff could only occasionally crouch, stoop, reach
6    overhead bilaterally, and move his neck. (AT 24.) The ALJ's decision is fully consistent with
7    Dr. Sommer's opinion. (AT 2131.)

2.    *Whether the ALJ improperly assessed plaintiff's credibility*

Plaintiff contends that the ALJ erred by discounting plaintiff's testimony regarding his symptoms and functional limitations without providing legally sufficient reasons.

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quoting <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the

"'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's subjective allegations. However, to the extent that the ALJ discounted plaintiff's testimony regarding the degree of his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i. Objective medical evidence

The ALJ found that the weight of the medical evidence did not support plaintiff's claims of limitation to the disabling degree alleged. (AT 25.) For example, the ALJ noted that in 2012, Dr. Soloniuk found that plaintiff was able to "transfer station to station without assistance and ambulates with a steady gait." (AT 26, 214, 226, 232, 479.) In 2013, plaintiff's gait was observed to be normal. (AT 26, 527.) In March 2015, he was diagnosed with right shoulder pain, but his shoulder strength was 4.5/5, his left shoulder was normal, and his gait was normal. (AT 2124.) A lumbar spine MRI on August 9, 2015 was negative for disc pathology or stenosis. (AT 27, 2124.) The ALJ further observed that in a January 2016 examination, plaintiff's strength was 5/5 in all extremities, tone was normal, there was no wasting or fasciculations, reflexes were 2+ and symmetrical, gait and coordination were normal, there were no limits to his range of motion, and he was alert and oriented times three. (AT 27, 2154.) The ALJ further observed that plaintiff's medical records showed no significant mental limitations. (AT 27-8, 213, 399, 635, 1976, 2127.)

To be sure, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d

10

676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). However, while a lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

### ii. Condition can be controlled with medication

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ noted that plaintiff reported to Dr. Soloniuk that Norco remains his saving grace; taken twice per day it allows him to maintain fundamental chores throughout the course of the day. (AT 27, 2174.) Some days, plaintiff needed no more than one opioid per day, and other times he went several days before the need for taking an opioid. (AT 2179.)

### iii. Personal observations at hearing

Although the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall credibility evaluation. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); SSR 96-7p, at *8. Here, plaintiff admitted that "all he can do for headaches is lay down." (AT 25.) The ALJ reasonably observed that, although plaintiff claimed he had a "bad headache" during the hearing, plaintiff was able to concentrate and answer questions competently. (AT 25, 51.)

### iv. Daily activities

Finally, substantial evidence supported the ALJ's finding that plaintiff's daily activities were inconsistent with his allegations of severely disabling symptoms and limitations. (AT 25.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina,

674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, the ALJ pointed to plaintiff's own testimony and subjective reports in medical evidence that he lived with his family, had a driver's license, watched television, visited his grandmother, could fish a limited amount, walked for exercise, could work on small projects around the house, could change light bulbs, and assisted friends with mechanical work. (AT 25, 54, 2178.) The ALJ rationally concluded that this evidence suggested that plaintiff was exaggerating his functional limitations.

In sum, the court concludes that the ALJ provided multiple specific, clear, and convincing reasons for discounting plaintiff's credibility. To be sure, the record may contain contrary evidence that plaintiff could point to in an attempt to bolster his credibility. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

        3.     *Whether the ALJ's Step Five Finding Lacks Substantial Evidence*

Plaintiff essentially argues that the ALJ erred by not including additional functional limitations in the RFC for purposes of the VE's hypothetical. However, for the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and

plaintiff's credibility. As such, the RFC is supported by substantial evidence in the record as a whole, and no additional limitations were necessary.

V. <u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 12) is GRANTED.
3. The Commissioner's final decision is AFFIRMED and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated: December 6, 2018

*[signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE